IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )
    v.                      )  CRIM. ACTION NO.
                            )    2:03cr259-T
LEON CARMICHAEL, SR.        )       (WO)
and FREDDIE WILLIAMS        )
```

ORDER

Defendants Leon Carmichael, Sr. and Freddie Williams are charged in the United States District Court for the Middle District of Alabama with a drug conspiracy, and Carmichael alone is charged with a money-laundering conspiracy. During the government's case in chief on June 9, 2005, Carmichael moved for a mistrial and Williams adopted that motion and also moved for severance, after the government elicited testimony from a government agent on redirect examination indicating that a 2002-2003 United States Drug Enforcement Administration (DEA) investigation of Carmichael's activities was closed after the confidential informant working with investigators refused to continue to cooperate

with law enforcement, stating that he was afraid Carmichael would kill him.

The court <u>conditionally</u> denied all motions. The denial was conditional because the court wanted to reconsider its ruling after reviewing the transcript and examining the law. The court has reconsidered its ruling and now denies all motions <u>unconditionally</u> for the following reasons.[1]

## I. Background

Throughout the trial, Carmichael decided, as a matter of defense strategy, to challenge the adequacy of the government's evidence at various stages of its investigation. Carmichael made that theory of defense clear in his opening statement as well as in his cross-examination of witnesses, and Williams acquiesced in the strategy by

---

1. Although Williams made a separate oral motion requesting severance in addition to a mistrial, he essentially adopted Carmichael's arguments in support of his motion for severance. Therefore, the court intends all of its reasoning to apply to all of the defendants' motions and does not deem it necessary to provide separate reasons for denying Williams's motion for severance.

sitting silent, clearly with the intent to enjoy the benefit of the defense himself.  This theory was particularly evident in Carmichael's cross-examination of Agent Tom Halasz, where he attempted to bring out the fact, without further explanation, that a 2002-2003 investigation of Carmichael was terminated due to a lack of evidence.[2]

On redirect examination, the government then asked Halasz to clarify why the investigation was terminated. Halasz responded that the investigation was closed after the confidential informant the government was relying upon at the time, Moses Williams, decided to discontinue cooperating

---

2.  On cross-examination, the following exchange occurred between Carmichael's counsel and Agent Halasz:

> "Q [Carmichael's counsel]: Now I'm looking at the report and again that indicates on March the 3rd, 2003 that, and I quote, no further information has been developed regarding this investigation.  There has been no drug or non-drug exhibits collected.  This investigative file is being administratively closed.  Correct?
>
> "A [Agent Halasz]: Correct."

with law enforcement, stating that he feared Carmichael would kill him if he continued to cooperate.[3]

---

3. The following exchange occurred between the government's attorney and Agent Halasz:

> "Q [Government's attorney]: Now counsel for Mr. Carmichael asked you about the investigation being closed at some point. I don't know precisely where. I think it may have been '02 or '03.
>
> "A [Agent Halasz]: I believe it was March of '03 if I recall correctly.
>
> "Q: Do you recall [what] it was that made you close your investigation at that point?
>
> "A: Yes. The person who provided us the initial information to initiate the investigation decided to discontinue cooperating with the D.E.A.
>
> "Q: And why was it that he chose to discontinue cooperating with you?
>
> "A: Because he was scared.
>
> "Q: And what was he afraid of?
>
> "A: He was afraid Leon Carmichael would kill him."

Not until this last answer did Carmichael and Williams object and ask for a mistrial, and Williams ask for a

(continued...)

Carmichael and Williams immediately objected to this response and moved for a mistrial; Williams also moved for severance.

In response to the motions, the court immediately directed the United States Marshal to produce Moses Williams, so that the court and the parties could hear first-hand what he had to say.  Moses Williams testified on direct examination (outside the presence of the jury) that, while he may have told the agent that he feared that Carmichael would kill him, he was lying.  The court then offered Carmichael and Williams an opportunity to cross-examine Moses Williams, but they declined.  The court also offered Carmichael and Williams the opportunity to have Moses Williams repeat his testimony before the jury so as to remedy any alleged hearsay problem and mitigate any alleged prejudice caused by the agent's testimony, but again they declined.

---

3.  (...continued)
severance.

## II. Discussion

Carmichael and Williams's arguments are fourfold. First, they argue that the government was obligated to reveal Moses Williams's statement to them before trial. Second, they argue that the statement constitutes inadmissible hearsay. Third, they argue that it should be excluded pursuant to Fed. R. Evid. 403 because it was highly prejudicial to the defense and had little to no probative value. Fourth, they argue that the testimony is inadmissible under Fed. R. Evid. 404(b) because it constituted evidence of other crimes, wrongs or acts offered against Carmichael as proof of his bad character. The court will address each of these arguments in turn.

### A. Government's Failure to Disclose

The defendants' argument that the government was obligated to notify them of their intent to introduce this statement prior to trial is meritless. Although the government's elicitation of this statement was no doubt an

unpleasant surprise, the defendants have cited no order, no rule, local or national, and no law that required such disclosure.[4]

### B. Hearsay

The defendants' argument that Moses Williams's statement constitutes impermissible hearsay fails for the simple reason that the statement was not offered into evidence for the truth of the matter asserted.  See Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  Williams's statement that he refused to cooperate with law enforcement because he was afraid Carmichael would kill him was offered by the government for the purpose of providing an explanation for why the 2002-2003 DEA investigation of Carmichael was closed.  This explanation was necessary to

---

4. The defendants initially cited Fed. R. Crim. P. 16, but when pressed could cite no provision in that rule that required such disclosure.

rebut the inference created by the defense on cross-examination that the investigation was closed due to a lack of evidence against Carmichael.

In short, because the government did not offer Williams's statement actually to prove that Williams was afraid of being (or would be) killed by Carmichael, it is therefore not hearsay.[5] See, e.g., United States v. Hawkins, 905 F.2d 1489 (11th Cir. 1990) (testimony of postal inspector in mail fraud case that numerous complaints had been received from participants in coupon purchase arrangement was admissible over hearsay objection; testimony did not attempt to establish truth of any claims but rather sought to explain why postal investigation was launched against corporation providing purchasing services, and to rebut defense claim that postal service had no basis for investigating corporation and harassed it out of business);

---

5. Alternatively, Moses Williams' statement also falls within Fed. R. Evid. 803(3), which provides an exception to the hearsay rule for "a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition."

8

<u>United States v. Mayes</u>, 370 F.3d 703 (7th Cir. 2004) (out-of-court statements by two informants that they could purchase cocaine at particular address were not hearsay, since they were admitted at trial for conspiracy to distribute cocaine and crack cocaine not for their truth, but rather to explain why police officers took steps to make controlled buys and to execute search warrants at that address).

## C. Rule 403

The defendants' argument that Moses Williams's statement is more prejudicial than probative under Rule 403 also fails.  Had the statement been introduced by the government on direct examination, the court would have sustained an objection to its admission by the defense on the grounds that the statement was both irrelevant under Fed. R. Evid. 401 and more prejudicial than probative under Rule 403.  However, the fact that the defense invited the prejudicial statement into evidence by calling the adequacy of the

9

government's investigation into question during its cross-examination compels the court to conclude that the probative value of the statement outweighs its prejudicial impact in the context in which it was introduced.

To be sure, the adequacy or quality of a criminal investigation may sometimes be relevant to the ultimate issue of guilt in a case. For example, such evidence may be relevant where the voluntariness of a confession or the integrity of the government's physical evidence, such as fingerprints or DNA samples, is at issue. See, e.g., Lowenfield v. Phelps, 817 F.2d 285, 291-92 (5th Cir. 1987) (holding that it was a reasonable trial strategy to attempt to argue that "sloppy police work" tainted the chain of custody for certain guns seized by the police and "set the stage for an argument that others were implicated in the murders"). Evidence of the government's failure to adequately investigate a third-party suspect may also be relevant where the defendant's theory of the case is that someone else committed the crime. See, e.g., United States

v. Crosby, 75 F.3d 1343, 1347 (9th Cir. 1996) (trial court's exclusion of evidence about adequacy of police investigation was error where it constituted strong, direct evidence that the victim's husband, not the defendant, had committed the crime).

However, in most cases, including this one, evidence questioning the adequacy of various aspects of the government's investigation itself--as opposed to the adequacy of the evidence gathered as a result of that investigation--is either irrelevant or of very little probative value, as it improperly shifts the jury's focus from the accusations against the defendant to accusations against the police.  See, e.g., United States v. Patrick, 248 F.3d 11 (1st Cir. 2001) (evidence suggesting police failed to investigate fully leads on other potential suspects during investigation was highly prejudicial and irrelevant where there was no indication that such leads would have pointed to the guilt of another suspect; "such speculative evidence of the inadequacy of the police

11

investigation would have [improperly] shifted the jury's focus"); United States v. Cordova, 157 F.3d 587, 593 (8th Cir. 1998) (upholding trial court's decision to limit defendant's cross-examination of government agent with regard to how he conducted his investigation where such evidence "was not only irrelevant, but [any] relevance was substantially outweighed by the possibility of misleading the jury in the case"); United States v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998) ("[U]nder our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty.  The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation"); United States v. Veal, 23 F.3d 985, 989 (6th Cir. 1994) (upholding a trial court's refusal to allow a defendant to show that the government's investigation had been "sloppy" because "the jury would not be called upon to determine whether the government's investigation had been good or bad").

Whether a testifying agent personally believes that the evidence he has against a defendant at the time of indictment is sufficient would seem in most, if not all, instances to be irrelevant.  Whether the evidence is adequate is solely an issue for the jury, and the agent does not have any expertise, any more than anyone off the street, that would render his personal beliefs about such evidence helpful to the jury.  An agent's belief about whether the evidence was sufficient a year or two before the defendant was indicted, when the agent decided to close the case, would be even more irrelevant, if something that is irrelevant can be more irrelevant.  Moreover, delving into an agent's thoughts about the adequacy of the evidence is fraught with landmines.  Not only does it involve delving into such soft evidence as the subjective thoughts of the agent, it also opens up the possibility of the introduction of such unreliable evidence as unsubstantiated leads and hearsay, which are the mainstay of an ongoing investigation but not the mainstay of a trial.

13

Nevertheless, as noted above, Carmichael decided, with Williams's agreement, to pursue a theory of defense that included questioning the sufficiency of the government's evidence <u>at various stages of its investigation</u>. In effect, after drawing out the fact that the DEA had to close the investigation against Carmichael in 2002-2003 for lack of evidence on cross-examination, the defendants themselves rendered the otherwise irrelevant and prejudicial statement of Moses Williams highly relevant for the purposes of rebutting the negative inferences they created about the adequacy of the government's investigation. <u>See</u>, <u>e.g.</u>, <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 172, 109 S.Ct 439, 451 (1988) ("[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is <u>ipso</u> <u>facto</u> relevant and therefore admissible under Rules 401 and 402").

Under these circumstances, any prejudice caused by the introduction of Moses Williams's statement is outweighed by

14

its probative value in explaining why the 2002-2003 investigation was cut short--an explanation that was necessary to avoid improperly distracting the jury from its primary task of evaluating the evidence itself.  See, e.g., United States v. Terzado-Madruga, 897 F.2d 1099, 1119 (11th Cir. 1990) (trial court did not err in admitting evidence that defendant had "placed a hit" on a former "lieutenant" in his drug trafficking gang; although such evidence was admittedly prejudicial, "the balance in close cases is struck in favor of admissibility in determining whether its probative value is outweighed by the danger of unfair prejudice").  In short, once they called into question the reason for the termination of the investigation, Carmichael and Williams opened the door to the introduction of this evidence.  And, having opened the door, they cannot now complain that only the evidence that helps them should come in while that which hurts them should not.[6]

---

6.  Two other points are also noteworthy.  First, Carmichael did not object to Agent Halasz's clearly hearsay testimony until he gave an answer that Carmichael did not
(continued...)

15

Finally, in an effort to mitigate any prejudice that Carmichael and Williams may have brought on themselves, the court directed the Marshal to produce Moses Williams, so that the court and the parties could hear first-hand what he had to say. As stated, Moses Williams testified on direct examination (outside the presence of the jury) that, while

---

6. (...continued)
like. See supra note 3. Second, Carmichael himself sought hearsay in questioning Agent Halasz about why the investigation was terminated. For example, on cross-examination, the following exchange occurred:

> "Q [Carmichael's counsel]: Now in terms of what that report says ... that was information that was related to you from an informant involved with ... Thomas Trucking which was Mr. Carmichael's business and again as it related to alleged drug activity.
>
> "A [Agent Halasz]: Yes.
>
> "Q: Okay. If I may now go to another report which was prepared by you on April the 30th. And again, [that] is a report that talked about Mr. Carmichael supposedly using tractor trailers or rigs to supposedly transport drugs in Montgomery, do I recall that?
>
> "A: It sounds accurate, yes."

16

he may have told the agent that he feared that Carmichael would kill him, he was lying.  As further stated, the court then offered Carmichael and Williams an opportunity to cross-examine Moses Williams, but they declined; the court also offered Carmichael and Williams the opportunity to have Moses Williams repeat his testimony before the jury so as to mitigate any prejudice caused by the agent's testimony, but again they declined.

### D. Rule 404(b)

The defendants argue that Moses Williams's statement is inadmissible under Rule 404(b), which provides that, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  This argument, too, is to no avail.  Even broadly construing Rule 404(b) to prohibit evidence of "any conduct of the defendant which may bear adversely on the jury's judgment of his character," <u>United States v. Cooper</u>, 577 F.2d 1079, 1087-88 (6th Cir. 1978),

Williams's statement that he refused to cooperate with the government because he feared Carmichael would kill him does not fall within the ambit of Rule 404(b).  A declarant's expression of his or her subjective fear of a defendant's possible <u>future</u> actions does not constitute excludable evidence of a defendant's <u>prior</u> crimes, wrongs, or acts under Rule 404(b).  Williams did not indicate to law enforcement that Carmichael had actually threatened him or indeed had taken any concrete action indicating his displeasure with Williams's cooperation. Rather, Williams's statement was an expression of concern that Carmichael might harm him in the future if he continued to cooperate.  That fear may or may not have had any basis in fact; in any event, it does not constitute evidence of a <u>prior</u> crime, wrong, or act of any kind that was actually committed by Carmichael, and therefore is not covered by Rule 404(b).

Even if the court concluded that Moses Williams's statement that he feared Carmichael would kill him if he continued to cooperate with law enforcement does constitute

18

conduct by Carmichael such that it falls within the ambit of Rule 404(b), the statement was not introduced by the government as proof of Carmichael's bad character, but rather for the legitimate purpose of establishing the motive of DEA in closing the 2002-2003 investigation. Rule 404(b) provides that, "Evidence of other crimes, wrongs, or acts ... may, however, be admissible for other purposes, such as proof of motive...."

To be sure, "other purposes" evidence is admissible under Rule 404(b) "provided that upon request by the accused, the prosecution ... shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Here, however, Carmichael did not request pretrial notice, nor should the government have otherwise felt an obligation to provide such pretrial notice, for there was no basis to predict that Carmichael himself would make the evidence relevant; as stated, evidence questioning the adequacy of

19

various aspects of the government's investigation itself--as opposed to the adequacy of the evidence gathered as a <u>result</u> of that investigation--is generally either irrelevant or of very little probative value.

### III. Conclusion

For the foregoing reasons, it is ORDERED that defendant Leon Carmichael Sr.'s oral motion for a mistrial, and defendant Freddie Williams's oral motions for a mistrial and severance are denied.

DONE, this the 14th day of June, 2005.

                                 <u>   /s/ Myron H. Thompson   </u>
                                 UNITED STATES DISTRICT JUDGE